This is a suit seeking damages for the government’s alleged breach of a contract for the sale of real property by the plaintiff to the defendant. Both parties moved for summary judgment, and we heard oral argument. We grant the government’s motion and dismiss the petition.
I.
On February 14, 1978, the plaintiff, for a $10 consideration, gave the government an option to purchase real property the plaintiff owned in Tulsa, Oklahoma, for $2,237,127. The option ran until March 31, 1978, and the agreement provided that if the government exercised the option, the plaintiff would give the government possession of the property by June 1, 1978, "or by written mutual agreement.” The parties understood that the purpose of the government in purchasing the property would be to. relocate the Tulsa Job Corps Center from its then site to the plaintiffs property.
Paragraph 5 of the option agreement stated that:
It is further understood and agreed that in the event the Governor of the State in which the premises are located exercies [sic] his right under Section 155(c) of the Economic Opportunity Act of 1964, as amended, to disapprove the establishment of a Job Corps Center, this agreement shall become null and void , and the Vendor shall forthwith return the sum for consideration of this option.
The option agreement apparently was a standard form contract. Attached to it was an exhibit containing various provisions relating to the property and defining the rights and liabilities of the parties to the contract.
According to an affidavit of plaintiffs attorney, on February 14,1978, he met in his office with Michael Dalton, "acting as agent for the U.S. Department of Labor,” who presented the option for signature by the plaintiff. When the plaintiffs attorney asked Dalton how long it would be before the option would be exercised and the closing would take place, Dalton produced a letter exercising the option, *550 signed by the Director of the Job Corps, and "stated that he was prepared to exercise the Option immediately.” The lawyer stated in his affidavit that he "specifically asked” Mr. Dalton
concerning the status of Paragraph 5 of the Option and Mr. Dalton responded, that had been taken care of and, while the Option was normally not exercised for 60 to 90 days, he was exercising it now and if we could meet title requirements, the closing should be in 30 to 60 days.[1]
A representative of the plaintiff then signed the contract and Dalton delivered the letter exercising the option and paid the $10 option fee.
On April 19, 1978, more than 2 months after the government exercised its option and 19 days after the option would have expired, the Secretary of Labor first wrote to the Governor of Oklahoma, notifying him of the project and informing him that "[pjursuant to Section 415(c) of the Comprehensive Employment and Training Act of 1973 . . ., you have 30 days from the date of this letter to disapprove this plan for a Job Corps center.” On May 2, the Governor responded that he wanted to hold a public hearing on the matter and that, because he had only 30 days in which to reject the proposal, he was doing so. On May 19, the Governor again wrote the Secretary, stating that "[t]he merits of such a relocation will be fully considered by this Office upon the proper procedural submisssion of a relocation plan, which also contains alternative site suggestions or sufficient evidence to show that no acceptable alternative sites are available.”
On May 25,1978, the Director of the Job Corps wrote the plaintiff that
[pjursuant to paragraph (5), and in view of the fact that the Governor has disapproved the establishment of a Center, the Option to Purchase Real Property agreement between the American Christian College, Inc., and the United States of America has become null and void.
He requested the return of the $10 the government had paid for the option. The plaintiff responded that "we do not *551 consider the Option to Purchase Real Property to be null and void and we do not intend to return the consideration paid for the Option.”
In the present suit, filed on May 23, 1979, the plaintiff seeks damages of $206,247 constituting the alleged difference between the sales price under the option contract and the lesser amount the plaintiff received when it subsequently sold the property. The government filed a counterclaim for the return of the $10 paid for the option.
II.
Although the contract for the purchase and sale of the real property took the form of an option agreement, the conduct of the parties demonstrates that this would not be an accurate characterization of the transaction. Although the option was for 45 days, it was exercised immediately after it was signed. Before the seller signed the option agreement, it knew this would be done. Apparently what happened was that the government used a standard form contract that it had employed in the acquisition of other Job Corps sites without realizing that the form was inappropriate for this transaction, and then carried out the transaction in a peculiar manner in order to conform it to the contract it was using.
Viewed fairly and realistically, this so-called "option” agreement was in fact a real estate purchase and sale contract, subject to the condition subsequent in paragraph 5 that if the Governor of Oklahoma disapproved the establishment of the Job Corps Center on the property within 30 days after the proposal had been submitted to him, the contract would be null and void.
The plaintiff argues, however, that under the statute approval by the Governor is required only for the establishment of a new Job Corps center in the State and not for the relocation of an existing center. The statute to which paragraph 5 of the option agreement referred was section 155(c) of the Economic Opportunity Act of 1964, which at the time the agreement was executed had been superseded by section 415(c) of the Comprehensive Employment and Training Act of 1973, Pub. L. No. 93-203, title iv, § 415, 87 *552 Stat. 871 (current version in 29 U.S.C. § 937 (Supp. II1978)). The 1973 statute provided:
No Job Corps center . . . shall be established within a State unless a plan setting forth such proposed establishment has been submitted to the Governor, and such plan has not been disapproved by him within 30 days of such submission.
The presence of paragraph 5 in the contract, however, shows that both parties recognized and contemplated that the proposed relocation of the Job Corps Center would be submitted to the Governor, and they provided that if the Governor disapproved it, the contract would be null and void. This view of the contract reflects a reasonable interpretation of the statute that the word "established” covers not only the creation of a new Job Corps center but also the relocation of an existing one.
Under the plaintiffs theory there would have been no reason for the inclusion of this provision in the contract. This court has followed "the well established rule that the intention of the parties is to be gathered from the whole instrument and that an interpretation which gives a reasonable meaning to all parts of the contract would be preferred to one which leaves a portion of it useless, inexplicable or inoperative.” Robert L. Guyler Co. v. United States, 212 Ct. Cl. 581, 581 (1977); Hoi-Gar Manufacturing Corp. v. United States, 169 Ct. Cl. 384, 395, 351 F.2d 972, 979 (1965). The plaintiffs interpretation of paragraph 5 would make that paragraph completely inoperative and ineffective.
We see nothing in paragraph 5 or in any other provision of the contract to support the plaintiffs further contention that "paragraph 5 implies that a reasonable attempt would be made by the government to secure the Governor’s approval.”
The remaining question is whether the Governor’s disapproval was timely under the contract so as to terminate the government’s obligation to purchase the property. The contract is ambiguous on this point. There are two possible meanings. Since under the statute the Governor has only 30 days to disapprove and since the government’s option runs *553 for only 45 days, the contract could be read as requiring that the government submit the proposal to the Governor in sufficient time that he could disapprove it within the 45-day period. We have held, however, that this was not an option contract but a purchase and sale contract subject to the condition subsequent of the Governor’s disapproval. In these circumstances we do not think the 45-day option period should be interpreted as limiting the time within which the Governor may disapprove.
Instead, we construe the contract as becoming inoperative if the Governor disapproved the proposed Job Corps Center before the closing date of June 1, 1978. Since the option date was inoperative, the later closing date is the most appropriate limitation upon the period during which the government may avoid liability as a result of the Governor’s disapproval. When the Governor disapproved the relocation of the Tulsa Job Corps Center in May 1978, the contract became null and void under paragraph 5. The government thereby was relieved from any obligation to purchase the property and is entitled to recover the $10 option fee.
The plaintiffs motion for summary judgment is denied, and the defendant’s motion is granted. The petition is dismissed. Judgment for $10 is entered for the defendant on its counterclaim.

 We find it unnecessary to decide whether Mr. Dalton was authorized to make such a commitment, which the defendant denies.